840 F.2d 17
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Walker MINK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellant.
 No. 87-1274.
 United States Court of Appeals, Sixth Circuit.
 Feb. 16, 1988.
 
 Before MERRITT and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Walker Mink appeals from the district court's order adopting the magistrate's recommendation that the Secretary's decision denying Mink's claim for social security disability benefits be affirmed. Mink contends that the Secretary's finding that he is capable of performing his past relevant work is not supported by substantial evidence. Because we find the Secretary's finding to be supported by substantial evidence, we affirm the decision of the district court.
 
 
 2
 Mink was born on December 1, 1928. At the time of his hearing before the Administrative Law Judge (ALJ), Mink was fifty-six years old. He was fifty-two when he allegedly became disabled as the result of a work-related accident on January 13, 1981. Mink completed the sixth grade and worked primarily as a machine shop supervisor and foreman during the years preceding the onset of his alleged disability. Mink testified before the ALJ that as a general foreman, his most recent job, he was on his feet about six hours a day and did no heavy lifting. Mink also testified that "the majority of the time [he] set [sic] in the office," and that he had less to do than when he walked the production floor as a foreman, the job he held before he became a general foreman. Mink concluded that he could not "do the walking required on the job" because of back pain resulting from the accident. The ALJ's characterization of Mink's past work as "light work" under 20 C.F.R. Sec. 404.1567(b) has not been challenged.
 
 
 3
 During the three years following the onset of his alleged disability, Mink consulted over ten different physicians. None of these doctors were able to discover any neurological problems or significant abnormalities with respect to Mink's back, and several questioned the severity of his alleged pain.
 
 
 4
 In February, 1981, Dr. Buchman opined that the "x-rays of [Mink's] lumbar spine essentially [are] within normal limits," and noted that Mink was over-reactive to light palpation in his lumber area. In May, 1981, Dr. McGauley, a neurosurgeon, noted, "Mr. Mink seems rather hypersensitive to pain. For that reason, it is very difficult to determine how significant the underlying problem is." In June, 1981, after examining Mink again and reviewing Mink's March 1981 lumbar myelogram, Dr. McGauley concluded that the myelogram "really appears pretty normal to me" and that Mink was "still quite hypersensitive and it is very difficult to evaluate him well." After reviewing Mink's myelogram in November, 1981, Dr. Kohen concluded, "I feel that a return to work on at least a part-time basis would be of some benefit to this patient's recovery."
 
 
 5
 In July, 1982, after his second examination of Mink, Dr. Sanford opined, "It is difficult to define the nature of this rather prolonged disability, with the complicating social elements involved." In August, 1982, Dr. Sanford opined that Mink's x-rays showed "no significant abnormality, as regards the lumbar spine study. The myelogram shows no significant abnormality...."
 
 
 6
 To substantiate his claims of pain, Mink relies upon the opinions of other examining physicians, including Dr. Winston, Dr. Denzin, and Dr. Holda. Dr. Winston stated in December, 1982:
 
 
 7
 In reference to his job description as a foreman, the statement that he requires extensive walking on the production floor is probably the most limiting feature and I think he is probably totally disabled for his present job because of back pain, particularly when he is up and around for long periods of time.
 
 
 8
 Dr. Denzin concurred, stating, "I think he [Mink] is disabled for his job as a general foreman...." Dr. Holda concluded that Mink:
 
 
 9
 should be restricted from heavy lifting with approximately fifteen pound weight restriction. He also should be restricted from repeat bending, prolonged walking or sitting. He may be able to do a sit down type of job which allows him to change positions frequently at his need. This should also allow him to walk around as necessary. I reviewed his duties as a general foreman. He would not be able to do the extensive walking on production floor as required. Because of this I feel he is unable to return to that type of job.
 
 
 10
 Mink's claim was denied by the Secretary both initially and upon reconsideration. Following a de novo hearing, the ALJ agreed with the Secretary's determination. The ALJ discredited the severity of Mink's alleged pain: "The medical evidence was considered in its entirety and fails to reflect that the claimant's condition is of such a level of severity as to preclude the claimant from engaging in substantial gainful activity."
 
 
 11
 The ALJ's analysis stopped at step four of the sequential analysis after he determined that Mink retained the residual functional capacity to perform his past relevant work as a general foreman. 20 C.F.R. Sec. 404.1520(e). His conclusion that Mink's subjective pain was a non-exertional limitation which did not prevent Mink from "returning to his past work" or performing other "light, semi-skilled work" was adopted as the final decision of the Secretary. We hold that substantial evidence supports the Secretary's determination.
 
 
 12
 "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983) (citations omitted). In this case, at least ten different physicians have examined Mink. Not one has found that Mink has any "neurological problems." Dr. Winston did not base his opinion of Mink's disability on any objective medical evidence. In fact, in one of his reports opining that Mink was disabled, Dr. Winston agreed with Dr. McGauley that Mink's myelogram was normal. Thus, it appears that Dr. Winston based his conclusion on Mink's own subjective complaints. Further, Dr. Winston opined that Mink was disabled from performing his job as a "foreman." It is unclear whether he is referring to the more rigorous, pre-promotion position which Mink held or to his less rigorous general foreman position.
 
 
 13
 Similarly, it is apparent that Dr. Holda based his opinion solely on Mink's subjective complaints, because he too could find no objective signs of back injury. Further, he opined that Mink "would not be able to do ... extensive walking on the production floor...." However, Mink himself testified that as general foreman, he "set or spent" most of the day in his office rather than on the floor.
 
 
 14
 Statements by physicians that a claimant is "disabled" or "unable to work" are not conclusive. They must be reviewed in light of the medical findings and other evidence upon which they are based. 20 C.F.R. Sec. 404.1527. Since Winston and Holda have based their opinions on subjective, non-medical evidence, their opinions are entitled to no greater deference than the opinion of the ALJ who has also had an opportunity to witness the claimant's demeanor. The ALJ discredited the severity of Mink's subjective pain based in part upon Mink's demeanor and credibility. The ALJ's opportunity to observe the demeanor of the claimant "is invaluable and should not be discarded lightly." Kirk, 667 F.2d at 538 (quoting Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (5th Cir.1978)).
 
 
 15
 In Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986), this court enunciated a two-pronged standard for analyzing whether a subjective claim of pain constitutes a disability.
 
 
 16
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 17
 Id., at 853. Applying the Duncan analysis to this case, it is apparent that Mink provided objective medical evidence of an underlying condition, but that evidence neither confirmed the severity of the alleged pain nor established any medical condition which could reasonably be expected to produce it. In fact, two examining physicians noted that Mink was "over-reactive to light palpation" (Dr. Buchman) and "hypersensitive to pain" (Dr. McGauley). Another physician, Dr. Sanford, simply concluded, "It is difficult to define the nature of this rather prolonged disability, with the complicating social elements involved."
 
 
 18
 We conclude that the ALJ's finding that Mink's subjective pain was not disabling is supported by substantial evidence. Thus, the only remaining question is whether there is substantial evidence to support the ALJ's conclusion that Mink's impairment did not prevent him from performing his past relevant work as a general foreman.
 
 
 19
 Mink testified that his previous job as a foreman mainly required extensive walking about the production floor. However, his more recent job as a general foreman required far less walking: "[T]he majority of the time I've set [sic] in the office but, I still had to go through the shop.... I had less then [sic] to do then [sic] I had when I was on the floor." Mink insists that he said "spent" and not "set," and that the transcript is simply in error. Assuming Mink's claim is true, there is no question that he also testified that he could stand or sit in thirty-minute intervals. Even if he "spent" most of his time in his office, Mink presumably was not restricted to either a standing or sitting position. Since he "really didn't have to do any heavy lifting at all," the only remaining basis for finding Mink unable to perform his past relevant work is his pain. However, as previously noted, the ALJ's finding that Mink exaggerated his pain is amply supported by the record.
 
 
 20
 Accordinly, we AFFIRM the judgment of the district court denying Mink's claim for disability benefits.